Good morning ladies and gentlemen. We welcome Judge Elaine Bucklow of the Northern District of Illinois who is sitting with us today. Our first case for argument this morning is Vexol v. Berry Global. Mr. Castillo. Good morning. May it please the court. We usually come to Chicago in December to experience the invitation to come in January where it's a little colder and appear before this honorable court. We're here on the de novo review of the district court's granting of a motion to dismiss a second amendment complaint that was filed by my client Vexol and Mr. Torreblanca against Berry Plastics a couple of years ago. This court's review of the motion dismiss is obviously de novo and to survive a 12 v. 6 motion to dismiss we need to plead facts sufficient to establish plausibility that the complaint entitles the plaintiff to relief on its face. The court is obviously well aware of the presumptions on a 12 v. 6 that all pleaded facts are accepted as true and all reasonable inferences from those facts are given credibility in order to support the claim. Whether or not there's enough facts to plead a cause of action depends on the contours of the cause of action. In this case there's two causes of action that the plaintiffs and we have brought against Berry Plastics and both of those are under Mexican law. The two causes of action are actos elicitos which elicit acts and dolos which is the equivalent of fraud. In Mexico there isn't a common law. I am puzzled by the assertion that Mexican law determines the liability of Vexol. I'm sorry it determines the liability of Berry. Berry is an American corporation which is being sued in its capacity as a shareholder of an American corporation which is a shareholder of a Mexican corporation. Now why would that lead to the application of Mexican law to Berry Global? The reason that Mexican law would apply is because the cause of action arises from Berry's conduct in Mexico. In Mexico? In Mexico, yes your honor. The complaint doesn't describe anything Berry did in Mexico. It barely describes anything Berry did, but it doesn't describe anything Berry did in Mexico. It alleges that Berry controlled its immediate subsidiary, Pliant, which controlled its subsidiary, but where do we find any allegation of things Berry did in Mexico? In paragraph 74, 75, 76, and 77 of the Second Amendment complaint it's tied to Berry's actions in Mexico. In paragraph 75 we plead that the attorney that prosecuted the Pagade and the mercantile court initiated the actions in Mexico and was approved by Berry and reports directly to Berry's legal department in the United States. It's not an allegation that Berry did anything in Mexico. If Berry tells its agent in London to do something, Berry has acted in the United States and the agent in London has acted in London. Where is there an allegation that Berry did something in Mexico? In the complaint I think that the fact that Berry directed and controlled the legal counsel in Mexico, and the complaints that we're complaining about your honor in the article 1910, and article 1910 of the Mexican Civil Code that's applicable in federal district and in any state in the Republic of Mexico, starts with whoever conducts, whoever by acting illicitly. Look, Mexico can write any law it wants, but it can't reach its law into the United States. The United States has a territoriality principle which it applies to its own laws. Laws governing the behavior of U.S. Laws governing the behavior of Mexican corporations don't apply in the U.S. I'm trying to figure out where there is an allegation of something concrete that Berry did in Mexico as opposed to something Berry did in the United States allegedly with consequences in Mexico. The only tie and the only connection that Berry has to Mexico obviously in the complaint against under article 1910 is the fact that Berry selected the counsel and the counsel in Mexico who prosecuted the illegal pagaret was out of the United States. And this isn't, you know, this is the first time I've argued this case on a motion to dismiss. I've survived summary judgment in Orange County and Dade County and I've tried a case very similar to this in the Southern District of Texas all the way to a jury trial and we provided the court with a copy of the U.S.A. on behalf of Pollo Loco Mexico, a civil society out of the Republic of Mexico and that jury charge is in the record at A362 to A407. The very same thing, the very same arguments that were made there are part of your question your honor is what did they do in Mexico? Mexico, while they were in the United States they directed activity in Mexico which was against the laws of the United States and held accountable in the United States. In the Pollo Loco case in the jury charge there was two questions that were submitted to the jury. Actos illicitos, did the U.S. company act illicitly by its acts in Mexico? The jury found yes. Indolos, which is the equivalent of fraud in Mexican law, the jury also found yes that the U.S. company because of its conduct to its agents, subsidiaries in Mexico did something wrong. Here though, I mean all essentially all of the allegations in the second amended complaint are the pliant did these things. The pliant did these things in Mexico. There really isn't anything about Barry, I mean you have it in your brief but it isn't in the complaint. Your honor, the underlying business actions that started the business relationship between Pliant and Vexal were through the name of Pliant because Pliant is the the Mexican company subsidiary of Barry but were the the illicit acts for the behavior against the good customs of wheel edge in fact in the petition the complaint that Barry's the one that selected the attorneys and the attorney in Mexico reported directly to Barry and that is what the illicit act is or the act against good customs is and so what article 1910 says is whosoever by acting illicitly or against the good customs and habit causes damage to another and so the pleading in the second amended complaint is that it's the prosecution of the of the false pagoda that was fabricated in the mercantile court against my client to avoid paying Vexal for the business that it had conducted through Pliant is the act against the good customs of Mexico. Well could we turn to your Dola's claim if you're saying that the complaint says that Barry through Barry hired an attorney or Barry had its subsidiary hire an attorney one or the other to prosecute this case in Mexico ordinarily that wouldn't satisfy the allegations that are necessary in a complaint here for fraud I mean I think I know it's a it's a complaint but it's a complaint in which you're alleging fraud and it's sort of all you have a sort of a bear allegation. The problem with that analysis your honor in the district is that they equated the caption of fraud or woeful misrepresentation of Dola's with our elements of fraud in the United States under common law where there's a representation that's material that the person who hears the representation relies on it so you get the requirements of the who what when where and why as opposed to under Mexican law it's under article 1815 in deception in contract and there's no requirement of intent there's no requirement of a material misrepresentation of fact like there is in the United States under a fraud claim under Mexican law under article 1815 deception and contracting means any suggestion or artifice used to induce other parties into error or to keep them in that state and it's bad faith. That's a claim for deceit which sounds in fraud which triggers the heightened pleading standards of rule 9b. But under Mexican law it doesn't have. It's a deceit claim under Mexican law. It requires deception and contracting or induce the other party into some form of error in the context of contract. In other words it's a fraud in the inducement claim what we would call a fraud in the inducement claim. There's the other part of it your honor and that is or once you in that state after there's. Right there's there's fraud of commission and fraud of omission that it's all the same it's fraud. It's a fraud in the inducement claim and so there's really no question that you're subject to the heightened pleading standards of rule 9b. I mean assuming you can get past the problem that Judge Easterbrook raised which as I understand it this is a attempting to pierce the corporate veil you explicitly disavowed that. Correct. So you do you do have this threshold difficulty of the failure to identify acts that Barry took in Mexico as opposed to working through its second subsidiary. Absolutely your honor. This is not a respondent superior or trying to pierce the corporate veil or any type of other attempt to establish vicarious liability of Don Barry. It's you look at 1910 or the Mexican Civil Code and it says whoever commits illicit acts or acts against the good customs and that pleading requirement is to identify the whoever acts against the good customs in Mexico. Prosecuting that false baguette threatening to get my client arrested and still hasn't carried out the criminal proceeding was a direct action we alleged in paragraph 75, 76, and 77 through Barry. There's no need of intent it's whosoever does it and I think in the complaint it shows that it's varied through the selection of counsel because that's the only way that it was prosecuted it was to the selection of counsel. At this point I'd like to reserve my remaining two minutes, 55 seconds for rebuttal. Certainly Mr. Castillo. Thank you. Good morning. Ms. Blanton. May it please the court. My name is Jean Blanton and I represent the appellee in this case Barry Global formerly known as Barry Plastics Corporation and with me today I have a representative from Barry Plastics, Jill Green. Would you please stand at the podium and speak so that the microphone records you. Yes your honor. Would you like for me to repeat the introduction? No please. My name is Jean Blanton and I represent the and today with me is Jill Green a representative from Barry Global. Barry Global was formerly known as Barry Plastics Corporation and that is so indicated in the caption. Your honors in terms of the application of Mexican law when this case commenced in the district court there were even less allegations in the complaint relating to Barry than there are now believe it or not and at that time every single fact or action that was referred to occurred in Mexico and so applying the Indiana choice of law rules myself and the court concluded that Mexico law applies and dismissed the Indiana claims that they attempted to bring at that time. It does feel awkward at this point to be dealing with Mexican law relating to dolus and illicit acts and in fact it's presented challenges in the case as I've researched it and as Mexican law has been applied in the United States we find many inconsistencies and it's Unlike US law where there are never any inconsistencies. Not to say that there isn't but the difference being that we are dealing with common law in the United States and in Mexico they're dealing with civil law and so you are to apply statutory language but the statutory language is sufficiently broad that it's difficult to say what that means in terms of application. Have you ever looked at the Code of Federal Regulations? Yes or the Internal Revenue Code for that matter. You know but the problem that we've had is you in in the United States what you oftentimes see is that those defending claims are left with trying to find someone who is versed in Mexican law to file an affidavit and say what Mexican law is and as we've gone through the process there have been inconsistencies revealed in terms of even whether or not a criminal act is required for illicit acts. The district court has declined to address that issue and so that is not up for review today but certainly would be of interest going forward if if the case were to survive and of course we believe that it shouldn't for all of the reasons you mentioned. Really tellingly about this case is that you can go from the beginning introductory sections of the complaint where the parties are identified and get all the way to paragraph 66 before Barry Plastics is even really mentioned and so it's you know how in the world can you meet the particularity requirements. I don't know what the claimant that Mr. Castillo has overbilled his clients by writing an excessive number of paragraphs. We have to consider what's actually in the complaint. But your honor even when you get to paragraph 66 it's a conclusory statement and so there's no factual background as you've pointed out this morning as to what action if any Barry Plastics took and and so when you get to paragraph 66 and the district court notes this in its opinion the sentence just simply says they've you know controlled actions through client to take action against the plaintiffs in Mexico. But it doesn't identify what actions Barry took in that regard. The only allegations that they make in the entirety of the of the factual section of the complaint relating to that are that Barry Plastics approved legal counsel in Mexico. From that paragraph they make the leap that is Barry's counsel in Mexico. But there's never an allegation that Barry had counsel in Mexico or that Barry itself was involved in any proceeding in Mexico, made any threats, took any action, any action at all. And so today what we're asking you to do is to affirm the dismissal, affirm the denial of leave. In this instance I think more particularly than I've seen in other cases the district court painstakingly told them what they needed to do to survive a second motion or a third motion specifically but and they admit in their briefs that they responded to most or many of those concerns alleged by the district or asserted by the district court. So clearly they have acknowledged that they did not meet all of that which the district court told them would be required in order to survive another motion to dismiss. And and I obviously I've asked for appellate fees here and I've asked for cost. And I understand that this court has concerns about many appellants and appellees asking for cost and appeal, asking for sanctions of any sort. I'm a little lost. Costs automatically go to the winner. Double costs. I think you're asking for a penalty. Yes, attorneys fees and double cost your honor. You are aware that rule 38 says that any such request in a brief shall be ignored. Rule 38 requires a separate motion. You chose to make your request in a brief and I don't see why we should do anything other than follow the rule and if you want, if you contend that your adversary has engaged in improper litigation practice, it always pays to follow the rules yourself. Yes, your honor. My recollection is the Seventh Circuit Handbook has some additional dialogue about how to deal with request for sanctions or cost. And so there's a little bit of a lack of clarity in terms of what was preferred. And so certainly that is a step that I don't understand that even remotely. Are you saying there's some ambiguity in the rule? No, there's some discussion in the handbook recommending how steps are to be taken as my recollection and I would have to pull the handbook to look at that language. But we did have debate internally. Rule 38 says if a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion, award, et cetera. Yes, your honor. I'm happy to file a motion subsequently. I'm not asking you to file a motion. I'm just telling you that putting something in your brief is completely ineffectual. That was the point of the amendment to rule 38 that was made in 1994. It's been with us for 23 years. Yes, your honor. My recollection, however, is that there's a local rule speaking to that. There is no local rule relieving somebody of the need to follow the national rule. And indeed, local rules inconsistent with the national rules are ineffectual. And we're happy, obviously, to follow the motion, to file a motion subsequently. But the point of making the statement is to say that when we received the appellant's brief, it became apparent that they now have asserted many statements about what their second amendment, second amended complaint, alleges that are not factually accurate. And we've cited 24 examples of such in a chart form for you in our appellee's brief that indicate many times they begin making allegations in their factual section in their appellant's brief that say what they alleged Barry Plastics did, when in reality, when you compare the allegations made, they're referring simply to either Aspen, who's a non-party, or a client, most of the time at all. And so I bring that up to caution you in reviewing the allegations that they say they've made within their briefing are not actually accurate. In terms of the denial of their motion for leave, while we're here on a de novo standard, the denial of the motion for leave is an abuse of discretion standard. And there is a plethora of case law in this circuit that when a district court provides reasoning as to why it denied and they follow the rule in terms of, you know, futility or the inability to correct deficiencies after given the opportunity to do so, that that should be affirmed. In this case, the district court gave explicit instructions, warned them that if they didn't comply with those instructions, that the case would be dismissed. And that is, in fact, what has occurred. So we would also ask that you affirm the denial of the motion for leave. And if you have no further questions, I will rest with that. Thank you. Thank you, Miss Blanton. Anything further, Mr Castillo? Couple of points, John. First of all, the practice of billing an attorney client the arrangement. I have this on a contingency fee, so pleading paragraphs 1 through 66 have no effect on my client, other than we're trying to prosecute a case for them on behalf of Vexil against Berry. The allegations that we've said in 75 to 77, where we include that the person's involved in the business negotiations, leading plaintiffs to purchase orders and were always held out, held themselves out as directors, executives, vice presidents, agents, employees, and legal counsel for defendant, you see the overlap in the president and executive officer of Berry Plastics being the president and member of Pliant in Mexico. The executive vice president is also a executive vice president and secretary in Pliant, Mexico, because it conducts its business through its subsidiary. So all of the allegations that we've made, and in our second minute complaint, which we transpose into our brief, is that we think that the actions by Pliant are the same officers, directors that are in Berry's and acting through those officers and directors, and specifically in prosecuting the pagare in the mercantile court, which is the egregious action, the against good customs, the illicit acts that were pleading in the actos illicitos was in the Berry's, the attorney in Mexico, Mr. Barron, was the, Byron, was the man who reported directly to Berry. And the standard here is, I know this court has previously said in the San Juan versus American Board of Psychiatry that on a motion to dismiss, the plaintiff receives the benefit of imagination so long as the hypothesis are consistent with the complaint. Here I think we go a little bit beyond the imagination in that we see that Berry Plastics directed, controlled the attorney who prosecuted the pagare in the mercantile court, and that's the actions that are against the good customs in the Republic of Mexico. So we hope that the court will reverse and remand this case consistent with allowing us to proceed on the second minute complaint with their claims against Berry. What is your what is your basis for saying that Berry directed the attorney to do this? Because we plead that the attorney in Mexico reported directly to Berry and after the complaint was filed and after Berry received it, the Mexican lawyers, we say that in paragraph 76, that represent Vexal and Mr. Torreblanca received instruction, received a comment that Berry's was, they were told by Berry's attorneys to go full force. So it's kind of like, how would they know unless, once the complaint was received by Berry in the United States, the word got back to Mexico, Mexican lawyers, Berry's told us to proceed with full force. It's more than an imagination. That's, that's, that occurred. So that plus the fact that there's an overlap in officers and maybe directors, anyway, officers is the base, really the basis for this whole case. I think that if the appliance, the Mexican legal counsel didn't report to Berry and wasn't approved by Berry in the United States, and that it was only the client or Aspen who were created, probably would not be sufficient. But the fact that we found this in other cases, Your Honor, but where U.S. counsel approves the actions in Mexico because they control the Mexican attorney. Thank you. Thank you. Thank you very much. The case is taken under advisement.